**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| arrivia Incorporated, et al., | No. CV-23-01039-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| John Rowley, et al., | |
| Defendants. | |

    Plaintiffs arrivia, Inc. ("arrivia") and Panda Holdco LLC ("Panda") are suing Defendants John Rowley, Marcia Rowley, and Open Network Exchange, Inc. ("ONE") for (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., (2) violation of the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 et seq., and (3) unjust enrichment. (Doc. 8.) Plaintiffs are also suing the Rowleys for two claims of breach of contract. Pending before the Court are two motions: Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), which is fully briefed (Docs. 24, 29, 35), and Defendants' motion for Rule 11 sanctions, also fully briefed (Docs. 30, 34, 36).[1]

    For the reasons set forth below, the Court (1) grants Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' DTSA, AUTSA, and unjust enrichment claims; (2) construes

---

[1] Oral argument is denied for both motions because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

Defendants' Rule 12(b)(3) motion as a *forum non conveniens* motion and grants the motion to dismiss the remainder of Plaintiffs' complaint (Doc. 8) without prejudice; (3) denies Defendants' motion for sanctions; and (4) denies without prejudice the parties' respective requests for reasonable attorneys' fees and costs.

## I.   BACKGROUND[2]

### A. The Delaware Lawsuit

The Rowleys are the former majority owners and executives of arrivia, a travel-loyalty provider specializing in the distribution and servicing of travel and leisure products. (Doc. 8 ¶¶ 1, 28.) In 2018, the Rowleys sold arrivia to Panda and entered into a Restrictive Covenant Agreement containing non-compete, non-solicitation, and confidentiality obligations. (¶ 34.) In 2020, the Rowleys formed ONE. (¶ 22.) In early 2021, Plaintiffs accused the Rowleys of violating their non-compete obligations. (¶¶ 45–47.) In April 2021, the Rowleys initiated a lawsuit in the Delaware Court of Chancery, seeking a declaratory judgment that ONE's business did not violate the Restrictive Covenant Agreement. (*Id.*) Plaintiffs filed an answer and counterclaims in response.[3] (¶ 47.)

### B. The Settlement Agreement & Release

On September 1, 2021, Plaintiffs and the Rowleys executed a Settlement Agreement ("Settlement") resolving the parties' claims in the Delaware litigation. (¶ 48; *see also* Doc. 8-4.) The Rowleys, arrivia, and Panda were all parties to the Settlement. (*See* Doc. 8-4.) ONE was included in the Settlement as an affiliate of the Rowleys but was not a signatory to the Settlement. (*Id.*) The Settlement included: a Mutual Release of Claims, Counterclaims, and Demands ("Release"); an Amended and Restated Restrictive Covenant Agreement; and a Confidentiality Agreement. (*Id.* §§ 2, 5, 24.) The Release provided the following:

---

[2] This section draws from the allegations in the complaint, which are accepted as true for the purposes of this order.

[3] The Court takes judicial notice of the Rowleys' complaint (Doc. 25-2) and arrivia and Panda's answer and counterclaims (Doc. 25-3) filed in *Rowley v. Panda Holdco LLC*, C.A. No. 2021-0351-JRS (Ch. Del. 2021) in the Delaware Court of Chancery. See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[The Court] may take judicial notice of court filings and other matters of public record.").

> Upon the Effective Date [of September 1, 2021], each of the Settling Parties, on behalf of themselves and each of their affiliates . . . hereby unconditionally and irrevocably releases and forever discharges each of the other Settling Parties and their respective affiliates . . . from any and all . . . claims . . . , whether state or federal, . . . whether . . . known or unknown to the parties as of the Effective Date, including but not limited to those in connection with or arising from the dispute over the Rowleys' non-compete obligations under the Restrictive Covenant Agreement . . . and/ or subject matters outlined in the Litigation; except no party is releasing any claims arising out of the performance or non-performance of the obligations set forth in this Settlement Agreement (including claims to enforce any provisions of this Settlement Agreement) and any claims expressly preserved herein.
>
> Each Settling Party acknowledges and understands that there is a risk that subsequent to the Effective Date of this Settlement Agreement, each Settling Party may discover, incur or suffer released claims that were unknown or unanticipated at the time of the Effective Date of this Settlement Agreement, and which, if known on the Effective Date . . . , might have materially affected each Settling Party's decision to enter into and execute this Settlement Agreement. Each Settling Party . . . is assuming the risk of such unknown released claims and agrees that this Agreement applies thereto.
>
> Without in any way limiting any other provisions of this Settlement Agreement, each Settling Party hereby covenants not to sue or to assert, prosecute, or maintain, directly or indirectly, in any form, any claims released by it pursuant to the releases included herein.

(*Id.* § 2.) The Settlement also contained a Governing Law provision, stating that claims "arising out of or relating to this Settlement Agreement" would be brought in the Court of Chancery of the State of Delaware. (*Id.* § 21.) The parties further agreed "not to bring any action or proceeding arising out of or relating to this Settlement Agreement or any of the transactions contemplated by this Settlement Agreement in any other court." (*Id.*)

### C. The Instant Lawsuit

In June 2023, Plaintiffs brought this action, asserting the following counts: (I) violation of the DTSA; (II) violation of the AUTSA; (III) breach of contract (non-solicitation); (IV) breach of contract (confidentiality); and (V) unjust enrichment. Counts I, II, and V—misappropriation of trade secrets and unjust enrichment—are alleged against both the Rowleys and ONE. Counts III and IV—breach of contract—are alleged only

against the Rowleys. (Doc. 8.)

Plaintiffs allege the following facts in their complaint: In the months following the Settlement, the Rowleys stole Plaintiffs' employees and used Plaintiffs' trade secret information to build ONE, which now directly competes with arrivia. (Doc. 8 ¶¶ 110–29.) In describing the "Rowleys' wrongful procurement" of confidential and trade secret information, Plaintiffs allege:

> Knowing they were leaving arrivia and scheming to create a competitive travel and technology company, the Rowleys took arrivia's trade secrets and confidential information. . . .
>
> First, on February 13, 2020—after she resigned her officer position at arrivia and reaffirmed her confidentiality obligations, but shortly before her arrivia email account was disabled—Mrs. Rowley sent herself approximately 640 documents in a zip folder . . . many of which contained arrivia's confidential and trade secret information. . . . Mrs. Rowley [also] retained her entire arrivia Outlook email collection on the laptop she kept, ensuring herself ready access to client, supplier, and employee contact information, in addition to an abundance of other trade secret information. . . .
>
> Second, in mid-2020, after he resigned from his officer position within arrivia, Mr. Rowley solicited and received several communications to his personal email address containing trade secrets and confidential information.

(¶¶ 68, 69, 73, 75.) Then, in describing ONE's "improper theft" of arrivia's trade secret information, Plaintiffs allege:

> In 2021, former arrivia employees emailed several of arrivia's highly confidential documents either directly to their [ONE company] email addresses or to their personal email addresses before forwarding them to ONE. For instance, arrivia's now-former Executive Director . . . sent an email to his ONE email address right before he left his arrivia employment on February 1, 2021 to work for ONE.

(¶¶ 78–79.) Plaintiffs also allege that Mr. Rowley sent emails to arrivia employees in February of 2021, "encourag[ing] arrivia employees to violate their own confidentiality obligations and send arrivia's protected competitive information to ONE." (¶¶ 81–82.) Plaintiffs further assert that Defendants continue to possess and refuse to return arrivia's trade secrets and that, with such trade secrets and confidential information in hand, the Rowleys have launched ONE as a competitor to arrivia. (¶¶ 85–99.)

For Plaintiffs' misappropriation of trade secrets claims under the DTSA and AUTSA, respectively, Plaintiffs allege that Defendants improperly acquired, continue to possess, and fail to return Plaintiffs' trade secrets and confidential information. (¶¶ 135–37, 153–55.) Further, Plaintiffs allege that Defendants have used and/or disclosed such trade secrets and confidential information, thereby violating the DTSA and AUTSA. (¶¶ 139–40, 145, 157–58, 163.) For Plaintiffs' breach of contract claims, Plaintiffs allege the Rowleys have breached the non-solicitation covenant of their 2018 Restrictive Covenant with Panda, which was reaffirmed by the September 1, 2021 Settlement. (¶¶ 166–81.) Plaintiffs also allege the Rowleys have breached the confidentiality covenant of the 2018 Restrictive Covenant with Panda, also reaffirmed by the Settlement. (¶¶ 182–92.) And finally, for their unjust enrichment claim, Plaintiffs allege "Defendants are in possession of and have used arrivia's valuable confidential information and trade secrets to launch ONE as a competitive business and unfairly compete with Plaintiffs." (¶¶ 193–98.)

Plaintiffs assert that their claims are timely because a tolling period must be added to the original claim accrual date. (¶ 127.) Though Plaintiffs do not expressly acknowledge what that claim accrual date is, Plaintiffs state:

> In order to allow for the potential return of arrivia's trade secrets and a business resolution to this matter, the parties entered into a tolling agreement, which was in place from November 22, 2022 to April 10, 2023. After business discussions broke down, the Rowleys and ONE terminated the tolling agreement. arrivia and Panda's claims are timely when the tolling period is added to the original claim accrual date.

(*Id.*)

## II.   DISCUSSION

### A. Motion to Dismiss

Defendants raise two bases for dismissal. First, Defendants argue Plaintiffs' misappropriation of trade secrets and unjust enrichment claims must be dismissed pursuant to Rule 12(b)(6) because Plaintiffs released these claims in their 2021 Settlement. Second, Plaintiffs' complaint must be dismissed pursuant to Rule 12(b)(3) because the parties

agreed in their Settlement not to bring any action arising out of or relating to the Settlement in any court other than the Court of Chancery of the State of Delaware and therefore Arizona is the wrong forum. The Court addresses each basis for dismissal in turn.

### 1. Rule 12(b)(6)

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal of a complaint, or any claim within it, is appropriate under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a 12(b)(6) motion to dismiss, a claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a Rule 12(b)(6) motion, the Court "generally consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

#### a. Misappropriation of Trade Secrets

Defendants argue that because the Release in the Settlement bars any and all claims known or unknown as of September 1, 2021, and because Plaintiffs' misappropriation of trade secrets claims accrued prior to September 1, 2021, Plaintiffs' claims are barred. (Doc. 24 at 8–13.) Defendants contend that under the DTSA and AUTSA, a claim for the misappropriation of trade secrets arises only once: when the initial misappropriation occurs. (*Id.*) Any subsequent use or disclosure of such trade secrets is not a distinct and separate claim for misappropriation of trade secrets; rather, each subsequent use or disclosure merely "augments" the initial claim. (*Id.*) Defendants argue that despite alleging Defendants' "continued use" of trade secrets *after* the Release, Plaintiffs' claims under the

DTSA and AUTSA arose *prior* to the Release because that is when the alleged initial misappropriation occurred. Therefore, Plaintiffs' DTSA and AUTSA claims are barred. (*Id.*)

Plaintiffs do not dispute that their DTSA and AUTSA claims accrued prior to the Release. (Doc. 29 at 10.) Instead, Plaintiffs argue that accrual date has "no bearing on whether . . . a continuing violation is actionable." (*Id.*) Plaintiffs note that both the DTSA and AUTSA define "misappropriation" as the initial acquisition of a trade secret as well as the disclosure or use of a trade secret. (Doc. 29 at 7.) Plaintiffs contend that their claims are based on the latter definition—that they seek to recover for Defendants' continued possession and use of arrivia's trade secrets. (Doc. 29 at 6–11.) Plaintiffs argue this type of misappropriation occurred after the Settlement and therefore the Plaintiffs did not release such claims. The Court is not persuaded.

Arizona has adopted the Uniform Trade Secrets Act ("UTSA"), and the DTSA is largely modeled on it. 1990 Ariz. Sess. Laws. ch. 37; *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1227 (E.D. Cal. 2018). Both the AUTSA and DTSA define "misappropriation" as either (1) "the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "the disclosure or use of a trade secret of another without express or implied consent by a person." A.R.S. § 44-401(2); 18 U.S.C. § 1839(5). Both statutes have a three-year statute of limitations, accruing on the date the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered. A.R.S. § 44-406; 18 U.S.C. § 1836(d). Furthermore, both the AUTSA and DTSA state that "[f]or the purposes of [the statute of limitations], a continuing misappropriation constitutes a single claim." A.R.S. § 44-406; 18 U.S.C. § 1836(d).

Contrary to Plaintiffs' argument, although the initial acquisition of trade secrets and the subsequent continued use of those same trade secrets may be multiple "misappropriations," they constitute a single claim. As the California Supreme Court explained in *Cadence Design Sys., Inc. v. Avant! Corp.*, 57 P.3d 647, 652 (Cal. 2002):

> A *misappropriation* within the meaning of the UTSA occurs not only at the time of the initial acquisition of the trade secret by wrongful means, but also with each misuse or wrongful disclosure of the secret. But a *claim* for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation . . . . Each new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than giving rise to a separate claim. . . .
>
> If "continuing misappropriation" is viewed as a single claim for statute of limitations purposes [only], then it is difficult to fathom how it could be treated as more than one claim for purposes of litigation generally. For example, a plaintiff could not legitimately plead separate claims of misappropriation for each misuse of a trade secret, for to do so would impermissibly evade the statute of limitations.

57 P.3d at 651–52. *Cadence* further notes that the drafters of the UTSA "explicitly . . . rejected the contrary view that misappropriation gives rise to multiple claims each time the trade secret is misused or improperly disclosed." *Id.* at 651.

The Court agrees with the reasoning in *Cadence* that an initial misappropriation of trade secrets and a subsequent continuing misappropriation constitute a single claim. *See also Deerpoint*, 345 F. Supp. 3d at 1228 ("Based on *Cadence* . . . , for the purposes of [UTSA], a separate future misappropriation claim against a single defendant and involving the same previously misappropriated trade secret is a legal impossibility."). The Court is also persuaded by the fact that states that have adopted the UTSA "consistently apply a single claim theory to misappropriation of trade secrets." *Id.* at 1227 (citing *Allied Erecting & Dismantling Co. v. Genesis Equip & Mfg.*, 805 F.3d 701, 705 (6th Cir. 2015)); *see also Adcor Indus., Inc. v. Bevcorp, LLC*, 252 Fed. Appx. 55, 62 (6th Cir. Oct. 23, 2007); *Nw. Osteoscreening, Inc. v. Mountain View Hosp., LLC*, No. 4:13-cv-00414-BLW, 2014 WL 4955673, at *6 (D. Idaho Oct. 2, 2014) ("Under [the UTSA], a continuing misappropriation constitutes a single claim, with only the potential [for] damages encompassed by a continuing misappropriation claim . . . expand[ing] with each illicit use or disclosure of the trade secret.") (internal citations and quotations omitted).

Plaintiffs contend that *Cadence* is inapplicable in this case because, unlike in

*Cadence*, the Settlement here contains a reaffirmation of Defendants' confidentiality obligations. (Doc. 29 at 10.) Plaintiffs argue that the Court should instead rely on the reasoning in *Junction Sols., LLC v. MBS DEV, Inc.*, No. 06-C-163, 2007 WL 4233995 (N. D. Ill. Nov. 21, 2007). In *Junction*, the parties had—like in this case—agreed to release any and all claims known or unknown as of the settlement agreement's effective date and further reaffirmed their confidentiality obligations. *Id*. at *6. Later, the plaintiff filed suit, alleging misappropriation of trade secrets based on the defendants' continued use of those secrets. *Id.* at 7. The district court found that the parties' settlement agreement did not release plaintiff's "continued use" claims against the defendants. *Id.* The court reasoned that based on the parties' reaffirmation of their confidentiality obligations in their settlement agreement, "it [was] not clear that [the plaintiff] intended to release claims arising from defendants' *future use* of trade secrets." *Id.* Furthermore, the court reasoned that if the agreement had released such claims against the defendant, "the logical extension of this argument is that [the plaintiff] agreed to grant defendants complete immunity from all claims relating their use of [the plaintiff's] trade secrets." *Id.* Relying on *Junction*, Plaintiffs now contend that "to dismiss Plaintiffs' suit entirely because some of Defendants' initial theft occurred before the Effective Date would fully insulate all of Defendants' misappropriation and continuing misuse." (Doc. 29 at 9.)

   The Court disagrees. As an initial matter, it is not clear how the reaffirmation of confidentiality obligations in the Settlement has a bearing on whether Plaintiffs' trade secrets claims were released. Aside from pointing out the fact the settlement in *Cadence* lacked a confidentiality reaffirmation, Plaintiffs do not elaborate on why this distinction matters. (Doc. 29 at 10.) Furthermore, for the same reasons stated in *Deerpoint*, the Court here finds that *Junction* is not persuasive. *See* 345 F. Supp. at 1225–26. First, no other court has adopted *Junction*'s above-mentioned reasoning. *Id.* Second, the Court disagrees that dismissing Plaintiffs' misappropriation claims would fully insulate Defendants' continuing misappropriation given that Plaintiffs can sue Defendants for breaching their contractual confidentiality obligations—which is what Plaintiffs have done in the instant case in

Count IV. *Id.* ("It is possible for plaintiffs . . . to obtain monetary damages and injunctive relief for the subsequent use or disclosure of a trade secret as part of a breach of contract/settlement claim."); *see also* A.R.S. 44-407 (stating that the AUTSA does not displace or affect "contractual remedies, whether or not based on misappropriation of a trade secret").

Plaintiffs also argue that in *Attia v. Google, LLC*, the Ninth Circuit held that the "continuing misappropriation" language of the DTSA is not relevant to whether the DTSA allows for claims of continued use, but rather is only relevant to when a claim accrues for statute of limitations purposes. 983 F.3d 420, 425 (9th Cir. 2020). But the issue in *Attia* is not the same issue as in this case. In *Attia*, the Ninth Circuit was examining whether a claim of misappropriation that accrued *prior to the enactment of the DTSA* foreclosed the possibility of a DTSA claim arising from the continued use of the trade secret *after DTSA's enactment*. *Id.* at 425. So, the holding there concerned misappropriation before and after the statute's enactment—not before and after a release of claims. *Attia* is inapposite.

In sum, the Court finds that under both the DTSA and AUTSA the continued improper use or disclosure of a trade secret after a defendant's initial misappropriation of that trade secret constitutes a "single claim of misappropriation" accruing at the time of the initial misappropriation.[4] Turning to the pleadings, Plaintiffs' claims under the DTSA and AUTSA are that Defendants, after improperly procuring trade secrets in 2020 and 2021, continued to possess and use Plaintiffs' trade secrets after the effective date of the Settlement.[5] The Court finds that Defendants' initial misappropriation before the Settlement and their continued misappropriation after the Settlement constitute a single

---

[4] The scope of the Settlement, including the parties' release of claims, is governed by Delaware law. (Doc. 8-4 § 21.) Delaware also follows the "single claim" approach regarding continuing misappropriations of trade secrets. *See Ocinum Biosolutions (India) Ltd. V. AstraZeneca UK Ltd.*, No. N15C-08-168 AML CCLD, 2019 WL 6726836, at *16 (Del. Dec. 5, 2019) ("Under 6 Del. C. § 2006, a 'continuing misappropriation constitutes a single claim' that accrues when the misappropriation reasonably could be discovered. That 'single claim' rule means a plaintiff may not bring separate trade secret claims for each use of the same trade secret, and the single claim [accrues] when the misappropriation was or could have been discovered.").

[5] Plaintiffs do not dispute that their claims for continuing misappropriation are premised on the allegation that Defendants improperly acquired those trade secrets in 2020 and 2021 *before* the Release. (Doc. 29 at 7; *see e.g.*, Doc. 8 ¶¶ 4–6 8–15, 68–99.)

- 10 -

claim. In turn, because these were claims known or unknown as of the effective date of the Settlement, Plaintiffs released these claims. Accordingly, the Court grants Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' DTSA and AUTSA claims.

### b. Unjust Enrichment

Plaintiffs plead in the alternative a claim for unjust enrichment. Specifically, Plaintiffs allege,

> Defendants are in possession of and have used arrivia's valuable confidential information and trade secrets to launch ONE as a competitive business and unfairly compete with Plaintiffs. Through the use of Plaintiffs' valuable information, Defendants have avoided significant costs and gained a head start. Defendants have retained and continued to use arrivia's valuable confidential information at Plaintiffs' expense to gain a competitive advantage and unfairly compete with Plaintiffs.

(Doc. 8 ¶¶ 195–96.) Defendants make two arguments for why Plaintiffs' unjust enrichment claim should be dismissed: (1) Plaintiffs' unjust enrichment claim based on Defendants' alleged misappropriation of trade secrets is preempted by the AUTSA and (2) Plaintiffs released this claim. (Doc. 24 at 10, 13; Doc. 35 at 8–9.) Plaintiffs respond that the AUTSA does not preempt their claim because the statute "does not displace common-law claims based on the alleged misappropriation of confidential information that is not a trade secret." Plaintiffs also argue that their unjust enrichment claim was not released, pointing to the same arguments they made for why their misappropriation of trade secrets claims were not released. (Doc. 29 at 12.)

The Court need not reach Defendants' first argument because the Court finds that Plaintiffs released their unjust enrichment claim. As discussed, Plaintiffs released all claims "known or unknown to the parties as of the Effective Date, including but not limited to those in connection with or arising from . . . the subject matters outlined in the [Delaware] Litigation." In that litigation, Plaintiffs claimed that the Rowleys breached their Restrictive Covenant Agreement with Panda by using confidential information for their personal benefit. (Doc. 25-3 at ¶¶ 96–107.) Plaintiffs alleged the Rowleys were using Plaintiffs' confidential and proprietary information for their own benefit and to unfairly establish their

competing business venture, ONE. (Doc. 25-3 ¶¶ 64–70.) Plaintiffs' unjust enrichment claim in the instant action appears identical to Plaintiffs' allegations and claims in the Delaware litigation.

Moreover, as with their misappropriation of trade secrets claims, Plaintiffs' claim that Defendants are using and benefiting from Plaintiffs' confidential information is premised on the allegation that the Defendants improperly acquired that confidential information *prior* to the Settlement. (*See e.g.*, Doc. 8 ¶¶ 68–79.) Yet Plaintiffs expressly agreed in their Settlement that "there is a risk that subsequent to the Effective Date . . . , each Settling Party may discover, incur or suffer released claims that were unknown or unanticipated at the time of the Effective Date" and that "each Settling Party is assuming the risk of such unknown released claims." Thus, even if Defendants' subsequent use of the confidential information was unanticipated at the time of the Settlement, the Plaintiffs were clearly aware at the time of the Settlement of the facts giving rise to this claim.

Plaintiffs' only argument concerning the release of this claim is that their "unjust enrichment claim may proceed like their trade secret claims." (Doc. 29 at 12.) However, given the Court's finding that Plaintiffs released their trade secret claims, Plaintiffs' argument fails. Plaintiffs provide no other argument as to why their unjust enrichment claim falls outside the scope of the Release. As such, the Court grants Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' unjust enrichment claim.

2. Forum-Selection Clause

The remaining two claims in Plaintiffs' complaint are for breach of contract, and these claims are brought only against the Rowleys. The Rowleys contend that pursuant to the Settlement's forum-selection clause, which requires that any claims arising out of the Settlement be brought in the Delaware Court of Chancery, Plaintiffs' breach of contract claims are in the wrong forum and therefore should be dismissed under Rule 12(b)(3). (Doc. 24 at 13–14.) Plaintiffs acknowledge that the forum-selection clause applies to their breach of contract claims but argue that to avoid claim splitting between their breach of contract claims and their misappropriation of trade secrets and unjust enrichment claims,

the Court should not enforce the forum-selection clause. (Doc. 29 at 14–15.) This argument necessarily fails because the breach of contract claims against the Rowleys are the only claims that remain, and so there is no risk of claim splitting.

Plaintiffs also argue that Rule 12(b)(3) is an improper mechanism for enforcing a forum-selection clause and that the appropriate way to enforce such a clause is either through a motion to transfer under 28 U.S.C. § 1404(a) or, for instances in which a forum-selection clause points to a non-federal forum, through the doctrine of *forum nonconveniens*. (Doc. 29 at 16–17.) They urge the Court to deny Defendants' motion or, in the alternative, transfer the case to Delaware. (*Id.*)

Plaintiffs are correct that a forum-selection clause cannot be enforced by a motion to dismiss under Rule 12(b)(3). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). However, the Court disagrees that transfer is appropriate here given that a transfer pursuant to § 1404(a) would send the case to federal court in Delaware, which is still the wrong forum. Plaintiffs even acknowledge that where a forum-selection clause points to a non-federal forum—as in this case—the doctrine of *forum non conveniens* is the appropriate mechanism of enforcing the clause.

The Court also disagrees that it should deny Defendants' motion to dismiss merely for a technical deficiency. Rather, in the interest of judicial efficiency and given that Defendants' motion is in substance a motion to dismiss for *forum non conveniens*, the Court will evaluate whether to dismiss the case based on those grounds. *See Mogannam v. First Fin. Merch. Servs.*, No. 15-CV-00827-TLN-CKD, 2016 WL 561813, at *2 (E.D. Cal. Fed. 12, 2016); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that federal courts have inherent power to dismiss an action on grounds of *forum non conveniens*). Furthermore, Plaintiffs are not prejudiced by the Court construing Defendants' motion this way given that the Plaintiffs themselves requested transfer to Delaware under § 1404(a), and the standard for granting transfer under § 1404 and dismissing a case on the grounds of *forum non conveniens* are the same. *Atl. Marine Const. Co.*, 571 U.S. at 61 ("[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same

balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way they evaluate a forum-selection clause pointing to a federal forum.").

In evaluating whether to dismiss for *forum non conveniens*, a court will typically consider private and public interests. *Id.* at 62–63. If, however, the parties' contract contains a valid forum-selection clause, a plaintiff's choice of forum merits no weight, arguments about the parties' private interests are not considered, and only public interests are considered. *Id.* at 63–64. Because public interests "will rarely defeat a [*forum non conveniens*] motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. A forum-selection clause should be enforced unless the resisting party makes a showing that enforcement of the clause is "unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Short Co.*, 407 U.S. 1, 10 (1972) (internal quotation omitted).

The Court finds the forum-selection clause here is enforceable. The only argument Plaintiffs raise as to why enforcing the clause may be unreasonable is that doing so would require Plaintiffs to split their misappropriation of trade secrets and unjust enrichment claims and their breach of contract claims across forums, forcing Plaintiffs to proceed piecemeal. (Doc. 29 at 14–15.) Again, given the Court's dismissal of the former claims, Plaintiffs' argument necessarily fails. Plaintiffs make no other arguments for why enforcing the clause is unreasonable under the circumstances. The Court finds that Plaintiffs have not "carried their heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause." *See Yei A Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018).

The Court next evaluates whether public interest considerations weigh against enforcing the forum-selection clause. They do not. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co.*, 571 U.S. at 62 n.6

(internal quotation omitted). There is no evidence that any of these factors justifies refusing to enforce the forum-selection clause. Nor do Plaintiffs argue that public interest factors weigh against enforcement of the clause. Thus, given that the forum-selection clause is valid and public interest factors do not weigh against its enforcement, the Court dismisses the remainder of Plaintiffs' complaint without prejudice under *forum non conveniens.*

### B. Motion for Sanctions

In addition to their motion to dismiss, Defendants also move for sanctions against Plaintiffs and their counsel for "bringing frivolous claims and initiating this action in bad faith." (Doc. 34.) For the following reasons, the Court denies Defendants' motion.

Under Federal Rule of Civil Procedure 11, courts may impose sanctions "when a filing is frivolous, legally unreasonable or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); Fed. R. Civ. P. 11(b). In those cases, a court may impose sanctions on one or more attorneys, law firms, or parties. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995); Fed. R. Civ. P. 11(c). However, courts "must exercise extreme caution" when imposing Rule 11 sanctions. *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994). A complaint is frivolous if it is both legally and factually baseless and is made without reasonable and competent inquiry. *Townsend v. Holman*, 929 F.2d 1358, 1362 (9th Cir. 1991). To constitute a frivolous legal position for Rule 11 sanctions, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Strom v. United States,* 641 F.3d 1051, 1059 (9th Cir. 2011) (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)). A court "should *not* impose Rule 11 sanctions in response to a pleading that makes a 'good faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose.'" *Id.* (emphasis added).

Separate from Rule 11, a court, under its inherent powers, may impose sanctions for bad faith. Before doing so, however, a "court must make an explicit finding that counsel's

conduct constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (internal quotations omitted). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument[] or argues a meritorious claim for the purposes of harassing an opponent." *Id.* at 649 (internal quotations omitted). As with ordering Rule 11 sanctions, imposing sanctions for bad faith is "an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt Co, Sec. Litig.*, 78 F.3d 431, 436–37 (9th Cir. 1996).

Here, Defendants assert that Plaintiffs' claims are frivolous because they were either released or brought in the wrong forum. (Doc. 34 at 9.) Defendants argue that "Plaintiffs ran afoul their Rule 11 obligations when they brought [trade secret] claims before this Court that they knew were already released" and that even a "cursory review of the basic statutory provisions of the AUTSA and DTSA" would have revealed to Plaintiffs that their claims were released. (*Id.* at 14.) Not so. Although the Court finds that Plaintiffs released their misappropriation of trade secrets and unjust enrichment claims, the law in this area is not clearly settled. This is evidenced by the fact that both Plaintiffs and Defendants directed the Court's attention to persuasive—but not binding—authority that supported their respective positions. (*See e.g.*, Doc. 24 at 8–9, Doc. 29 at 8–9.) Just as Defendants urged the Court to adopt the reasoning used in *Cadence*, Plaintiffs made a good faith argument for why the Court should instead adopt the reasoning in *Junction*. As it stands, there is no Ninth Circuit precedent that speaks to this issue of released misappropriation of trade secrets claims—that is whether a party that releases past claims of misappropriated trade secrets also releases claims for the continued misappropriation of those secrets. Thus, it was not clear under existing precedent that Plaintiffs' claims of misappropriated trade secrets and unjust enrichment stood no chance of success, and so the Court does not find these claims frivolous.

Defendants also assert that "Plaintiffs' claims for breach of the Settlement Agreement were frivolously brought in this Court" given the Settlement's forum-selection clause. (Doc. 34 at 15–16.) The Court disagrees. Plaintiffs' forum selection was not, as

Defendants argue, "objectively baseless." Plaintiffs provided a reasonable and legally sound argument, though ultimately unsuccessful, for bringing their breach of contract claims in this Court rather than Delaware. Although Plaintiffs acknowledged that the forum-selection clause covered their breach of contract claims against the Rowleys, Plaintiffs asserted in their complaint that the forum-selection clause did not "govern ONE or the trade secret claims to which the contract issues are closely connected and which involve similar conduct." (Doc. 8 § 27n.1.) It was reasonable for Plaintiffs to institute their action in Arizona to avoid claim splitting and proceeding piecemeal in their litigation.

Finally, Defendants argue that Plaintiffs brought this suit in bad faith—that Plaintiffs knew their trade secrets claims were barred, made false representations of fact to "manipulate their way" into this Court, and knowingly chose to bring their suit in an improper forum. Again, the Court disagrees. As discussed, the Court does not find Plaintiffs' claims frivolous. Nor is there any evidence that Plaintiffs brought their claims to harass Defendants. Furthermore, though Defendants accuse Plaintiffs of making "false representations," Defendants do not point to any specific evidence of this, and the Court, upon its own review of the record, finds none.

In sum, there is no evidence that Plaintiffs filed their complaint frivolously or for an improper purpose. The Court concludes that Plaintiffs and their counsel neither violated Rule 11 nor engaged in bad faith conduct. Accordingly, the Court denies Defendants' motion for sanctions.

### C. Attorneys' Fees

Lastly, Defendants seek an award of their reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341.01, 12-341, 12-349, 44-404 and 18 U.S.C. § 1836(b)(3)(D), and Plaintiffs seek an award pursuant to Federal Rule of Civil Procedure 11(C)(2). (*See* Doc. 24 at 14, Doc. 30 at 17.) The parties' requests are denied without prejudice because neither complies with LRCiv 54.2.

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 24) is **GRANTED** as follows:

- Plaintiffs' DTSA claim (Count I), AUTSA claim (Count II), and Unjust Enrichment claim (Count V) are dismissed pursuant to Rule 12(b)(6);
- The Court construes Defendants' motion to dismiss the remainder of Plaintiffs' complaint pursuant to Rule 12(b)(3) as a motion to dismiss under *forum non conveniens* and dismisses the remainder of Plaintiffs' complaint without prejudice to the remaining claims being refiled in the Delaware Court of Chancery.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties' respective requests for attorneys' fees (Docs. 24, 34) are denied without prejudice to the parties moving for those fees in a manner that complies with LRCiv 54.2, if appropriate in light of this disposition.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to terminate the case.

Dated this 8th day of November, 2023.

Douglas L. Rayes
United States District Judge